**Case No. 14-1301**

_____

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

JOHN CHARLES SCOTCHEL, JR.

*Debtor-Appellant*

**v.**

MARTIN PATRICK SHEEHAN,

*Trustee-Appellee*

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Hon. Irene M. Keeley, U.S. District Judge**

_____

**OPENING BRIEF OF APPELLANT**

**John C. Scotchel, Jr.**
**P.O. Box 1289**
**Morgantown, WV 26507**
**304-292-8096**
**304-292-8097 fax**
scotchel@gmail.com
*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  14-1301           Caption:   John C. Scotchel, Jr. v. Martin Sheehan

Pursuant to FRAP 26.1 and Local Rule 26.1,

John Charles Scotchel, Jr.
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                           ☐ YES ☑ NO
        If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
If yes, identify any trustee and the members of any creditors' committee:

Trustee:  Martin P. Sheehan (Appellee)
41 Fifteenth Street
Wheeling, WV 26003

*No creditors' committee.

Signature: /s/ John C. Scotchel, Jr.                     Date:     April 11, 2014

Counsel for: Appellant

## CERTIFICATE OF SERVICE
**************************

I certify that on     April 11, 2014     the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Trustee:  Martin P. Sheehan (Appellee)
WV State Bar No. 4812
Sheehan & Nugent, PLLC
41 Fifteenth Street
Wheeling, WV 26003

/s/ John C. Scotchel, Jr.                          April 11, 2014
         (signature)                                     (date)

- 2 -

Print    Save    Reset Form

# TABLE OF CONTENTS

Disclosure of Corporate Affiliations and Other Interests...................................................i

Table of Contents ...............................................................................................................iii

Table of Authorities ..........................................................................................................iv

Statement of the Basis of Appellate Jurisdiction .............................................................. 1

Standard of Review............................................................................................................2

Issues Presented ................................................................................................................ 3

Statement of the Case ....................................................................................................... 4

Procedural History............................................................................................................4

Statement of Facts ............................................................................................................ 6

Brief Summary of Argument ............................................................................................ 9

ISSUES AND ARGUMENT............................................................................................12

ISSUE I.........................................................................................................................12

WHETHER THE LOWER COURTS COMMITTED ERROR BY HOLDING THAT THE DEBTOR'S ENTIRE POST-PETITION EARNINGS FROM A PENDING ATTORNEY-CLIENT CONTINGENT FEE AGREEMENT BELONGED TO THE BANKRUPTCY ESTATE PURSUANT TO BANKRUPTCY AND WEST VIRGINIA LAW.

ISSUE II ......................................................................................................... 28

WHETHER THE LOWER COURTS COMMITTED ERROR BY ALLOWING THE TRUSTEE TO OBJECT TO AN ASSET THAT WAS NEVER PART OF THE BANKRUPTCY ESTATE BY MISAPPLYING  11 USC § §541 AND 542 IN CONTRAVENTION OF  11 U.S.C. §541(A)(6),  11 U.S.C. §356(C)(1)(A) AND 11 U.S.C. §365 (D)(1)

ISSUE III...............................................................................................................42

WHETHER, AND TO THE EXTENT RELIED UPON BY THE LOWER COURTS, THE TRUSTEE'S FAILURE TO FILE AN ADVERSARY PROCEEDING TO ASSERT EQUITY AND DECLARATORY RELIEF WRONGFULLY DENIED DEBTOR THE OPPORTUNITY TO ADDRESS THESE NON FILED ACTIONS THAT CAUSED EXTREME MONETARY PREJUDICE TO THE DEBTOR IN THE AMOUNT OF $690,000.00.

Conclusion ................................................................................................... 44

Request for Oral Argument..........................................................................................44

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abramson ex rel. Estate of Abramson v. Laneko Eng*., 370 F.Supp.2d 498 (S.D. W. Va., 2005)……………………………………………...…38,39

*Affordable Efficiencies, Inc. v. Bane (In re Bane)*, 228 B.R. 835, 840 (Bankr.W.D.Va.1998)……………………………………………………13

*Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985)…………………....2

*Bearman v Shearin*, 224 F.3d 346, (4th Cir. 2000)…………………….…2

*Bailey v. Suhar (In re Bailey)*, 380 B.R.486, 490 (B.A.P. 6th Cir. 2008…30

*Butner v. United States,* 440 U.S. 48, 55 (1979)…...…………………….31

*Cheadle v. Appleatchee Riders Ass'n (In re Lovitt)*, 757 F.2d 1035, 1041 (9th Cir.1985)……………………………………………………………13

*Carrico v. Tompkins (In re Tompkins),* 95 B.R. 722, 724 (9th Cir. BAP 1989)………………………………………………………………..13

*FitzSimmons v. Walsh*, 725 F.2d 1208 (1984)…………………………21

*In re: Carlson*, 263 F.3d 748, 750 (7th Cir. 2001)………………………31

*In re Goodson Steel Corp.*, 488 F.2d 776 (5th Cir.1974)…………….....27

*In Matter of Hayne*s, 679 F.2d 718 (7th Cir.1982)………………………19

*In re Meredith,* 527 F.3d 372, 375 (4th Cir. 2008)………………………..2

*In re Mitrano*, 409 B.R. 812, 815 (E.D. Va. 2009)………………………..2

*In re Runski*, 102 F.3d 744, 745 (4th Cir. 1996)………………………….2

In re *S.E. Hornsby & Sons Sand & Gravel Co.,* 57 B.R. 909 (Bankr.M.D.La.1986)……………………………………………………27

*In re Tonry*, 724 F.2d 467 (5th Cir.1984)………………………………..25

*In re Vecchitto*, 235 B.R. 231 (Bankr. Conn., 1999)……………………13

*In re Wilson*, 149 F.3d 249, 251 (4th Cir. 1998)…………………………..2

*Gilbert v. Scratch 'N Smell, Inc.*, 756 F.2d 320 (4th Cir. 1985)…………2

*Jess v. Carey*(*In re: Jess*),169 F.3d 1204 (9th Cir. 1999)……………10,9,10

*McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit),* 217 F.3d 1072, 1078 (9th Cir. 2000)……………………………………3,14

*McCracken v. Selner (In re Selner)*, 18 B.R. 420, 421-22 (Bankr. S.D.Fla.1982)……………………………………………………………19

*Neely v. Zimmer* (S.D. W. Va., 2012)( affirmed by 4th Circuit, 2013)…23

Sharp v. Dery, 253 B.R. 204………………………………17,18,19,21,22,23

*Tennessee Valley Authority v. Kinzer, 142 F.2d 833, 838(6th Cir.1944).*19

*Towers v. Wu (In re Wu)*, 173 B.R. 411 (9th Cir. BAP 1994)……19,20,21

*Turner v. Avery (In re Avery)*, 947 F.2d 772, 774…..…………….....26,31,40

*Vogel v. Palmer (In re Palmer)* 57 B.R. 332 (Bankr. W.D. Va. 1986)…………………………………………………………18,21
*United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)……..*2

**FEDERAL STATUTES AND RULES**

RULE 7001…………………………………………………………….......42
RULE 7001(1)(4)(7)(9)…………………………………………………42
*11 U.S.C. § 323*………………………………………………………27
11 USC § 365 (d)(1)……………………………………………….………….12
*11 USC § 365(e)(2)(A)(i)*…………………………………………………3,25
11 USC § 365 (c)(1)(A)…………………………………..…………….....3,9,11
11 USC § 541(a)…………………………………………..…1,3,24,28
11 USC § 541(a)(6)………………………………………………3,24,28
*28 U.S.C. §157(b)(1)* and *§157(b)(2)(E)*……………………….........................1
*28 U.S.C. § 158(d)(1)* ………………………………………………1
*U.S.C. §1291.* ………………………………………………..…1
*28 U.S.C. §1334(a)* and *28 U.S.C. § 158(a)(1)*……………………………1

**STATE STATUTES AND AUTHORITIES**

*West Virginia Code Section 30-2-15*……….…….……..….……….. 22,29
*West Virginia Rules of Professional Conduct* **Rule 1.2**. Scope of Representation……………………………………………………23
West Virginia Rules of Professional Conduct Rule 1.5………………22

**STATE CASES.**

A*etna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986)……………………………………………………..34
*Clayton v. Martin, 151 S.E. 855, 856-57 (W.Va. 1930)…………….……..31*
*Kopelman and Associates, L.C. v. Collins, 473 S.E.2d 910, 916-17 (W.Va. 1996)……………………………………………….……31,32,38*
*Metzner v. Metzner*, 191 W.V 387, 446 S.E.2d 165 (1994)…………….39
*Polsley & Son v. Anderson*, 7 W.Va. 202, 23 Am.Rep. 613 (1874). ….32
*Stafford v Bishop, 127 S.E. 501 (1925)……………………………..32,33,35*
*Statler v. Dodson,* 466 S.E.2d 497, 505 (W.Va. 1995)…………………..31

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This is an appeal from a final order of the District Court (JA 390) affirming the Bankruptcy Court's Order adverse to Appellant (Debtor). (JA 236). The Bankruptcy Court asserted jurisdiction under *11 U.S.C. §541, 11 U.S.C. §542*, and 2*8 U.S.C. §157(b)(1)* and *§157(b)(2)(E)*. The Bankruptcy Court Order was entered on April 26, 2013,(JA 236)  and the Notice of Appeal to the District Court was timely filed on May 10, 2013 (JA 244). The District Court affirmed the Bankruptcy Court and the District Court's Order was entered and docketed on March 3, 2014 (JA 390). The Notice of Appeal to this Court was timely filed on April 1, 2014 (JA 410).

The District Court had jurisdiction over the appeal pursuant to *28 U.S.C. §1334(a)* and *28 U.S.C. § 158(a)(1)*. This Court has jurisdiction over this appeal pursuant to *28 U.S.C. § 158(d)(1)* and *28 U.S.C. §1291*.

Consequently, this appeal is ripe for consideration by this Court.

Standard of Review:

The Debtor contends that the standard of review is set forth in *Bearman v Shearin*, 224 F.3d 346, (4th Cir. 2000) "We review an appeal from a district court's order affirming an order of the bankruptcy court de novo. See *In re Wilson*, 149 F.3d 249, 251 (4th Cir. 1998). We stand in the shoes of the district court as we review the conclusions reached by the bankruptcy court. See *In re Runski*, 102 F.3d 744, 745 (4th Cir. 1996)." The District Court reviews a bankruptcy court's conclusions of law de novo. See *In re Mitrano*, 409 B.R. 812, 815 (E.D. Va. 2009); *In re Meredith,* 527 F.3d 372, 375 (4th Cir. 2008); *Gilbert v. Scratch 'N Smell, Inc.*, 756 F.2d 320 (4th Cir. 1985). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). In cases where the issues present mixed questions of law and fact, the reviewing court applies the clearly erroneous standard to the

factual portion of the inquiry and de novo review to the legal conclusions derived from those facts. See *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond,* 80 F.3d 895, 905 (4th Cir. 1996). Finally, decisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion. See *In re Morris,* 385 B.R. 823, 828 (E.D. Va. 2008).

Issues Presented:

The Appellant/Debtor has raised the following issues in this appeal:

I. Whether the lower Courts committed error by holding that the Debtor's entire post-petition earnings from a pending attorney-client contingent fee agreement belonged to the bankruptcy estate pursuant to bankruptcy and West Virginia law.

II. Whether the lower Courts committed error by allowing the Trustee to object to an asset that was never part of the bankruptcy estate by misapplying *11 U.S.C. § §541* and *542* in contravention of *11 U.S.C. §541(a)(6),  11 U.S.C. §365(c)(1)(A)* and *11 U. S.C. §365 (d)(1).*

III. Whether, and to the extent relied upon by the lower Courts, the Trustee's failure to file an adversary proceeding to assert equity and declaratory relief wrongfully denied Debtor the opportunity to address these non-filed actions that caused extreme monetary prejudice to the Debtor in the amount of $690,000.00.

Statement of the Case

Procedural History

The Debtor, John Charles Scotchel, Jr. with his wife, Helen Holland Scotchel, who is not named in this appeal, filed their voluntary Chapter 7 bankruptcy petition and schedules on January 5, 2012. (JA 33) John Charles Scotchel, Jr., Appellant/Debtor, is an attorney, licensed to practice in the State of West Virginia. In connection with his schedules he listed an asset described as "contingent fee agreements related to the legal practice of John Charles Scotchel, Jr.," which he valued in the amount of $1.00.   The only significant contingent fee agreement is the subject of this appeal and relates to a case referred to as the "Falls Case" and a document

4

entitled "attorney retainer agreement - contingent fee". (JA 218-219)

The Debtor filed the necessary schedules through his attorney Thomas H. Fluharty. (JA 37) On February 9, 2012 a §341 hearing was conducted with Appellee as the named Chapter 7 Trustee. (JA 42) Subsequently, the Trustee filed objections to Debtors claimed exemptions.(JA 112)   After unrelated exemptions were ruled upon, the Bankruptcy Court set an evidentiary hearing for December 20, 2012 to determine if the Falls Case contingent fee agreement was property of the bankruptcy estate, and if so,  the value of this asset at the time of filing the Debtor's petition for bankruptcy.(JA 188)

At the conclusion of the evidentiary hearing, the Bankruptcy Court kept the record open for the limited purpose of resolving whether there was an extant settlement offer in the Falls Case on January 5, 2012, the terms of the referral between Bordas & Bordas and Debtor, and to permit Debtor more time to consider whether he would testify.(JA 359) On January 15, 2013, the court held a telephonic status conference. During the conference, the Debtor indicated that

the only other evidence he planned to submit was an affidavit of James G. Bordas, Jr., a senior partner at Bordas & Bordas.

The parties briefed the issues and on April 26, 2013, and the Bankruptcy Court ruled that the entire post-petition fee paid to Debtor, as an independent contractor providing professional services to his client and to the law firm of Bordas and Bordas, was entirely the property of the bankruptcy estate.(JA 233) After receiving this adverse order, the Debtor appealed to the District Court( JA 244) The District Court affirmed the Bankruptcy Court on March 3, 2014.(JA 390) The Debtor respectfully filed this appeal by submitting a Notice of Appeal on April 1, 2014 (JA 410).

Summary of Facts

At the time of filing the petition the Debtor was obligated to perform certain duties under a contingent fee sharing agreement with a law firm to represent Ms. Cindy Jo Falls in a first party bad faith case ("Falls Case") against her insurance company. The attorney retainer agreement was between the law offices of "Bordas and Bordas, Debtor, and Cindy Jo Falls" and relates to a claim pending in the Circuit

Court of Marshall County, West Virginia at the time Debtor's petition was filed.(JA 218-219)

The Falls Case initially arose in May 1989 with the underlying personal injury case resolved in September, 1999 with only the Debtor representing Ms. Falls. The Debtor entered into a fee sharing agreement with another law firm to prosecute additional claims related to the Falls Case where the Debtor attorney had continuing ethical and contractual duties to Ms. Falls, the client, and to the law firm of Bordas and Bordas. Debtor attorney had to satisfy these duties in order to claim any attorney's fees. Thereafter, on September 25, 2000 the first party bad faith claim was filed in Marshall County, West Virginia. In addition, the Debtor-attorney was subpoenaed and became a material witness in the case which eventually settled on the eve of trial almost 3 months after Debtor filed for bankruptcy.

The Bankruptcy Court alluded to the uncertainty of whether there were settlement offers pre-petition, but this issue was clarified when the Debtor submitted the affidavit of Mr. James G. Bordas, Jr. senior partner of Bordas and Bordas.

(JA 220-223). Mr. Bordas had full knowledge about whether any settlement offers had been made before or after Debtor filed his bankruptcy petition. Mr. Bordas provided an affidavit noting a lack of any settlement offers as well as the Debtor's continued contractual and legal duties required of Debtor post-petition in order for Debtor to receive the post-petition fee. As expressed in the undisputed affidavit of Mr. Bordas, the Debtor's had continuing duties post-petition that were necessary for the successful resolution of the Falls case and the entitlement of Debtor's attorney's fees. (JA 220-223)

The Debtor also proffered the testimony of attorney Michael Benninger to show that Debtor had ethical duties related to the Falls Case and that Debtor was ethically prohibited from trying to recreate billable hours in this type of contingent fee case thus preventing Debtor from arguing that he earned a specific hourly fee post-petition from the Falls Case or to use in a quantum meruit analysis. (JA 319-354)

In attempting to prove that the asset in question totally belongs to the bankruptcy estate and that the value of Debtor's contingent fee agreement at the time of filing

debtor's petition, the Trustee called one witness, Christopher J. Regan, an attorney familiar with the Falls Case. A careful review of Mr. Regan's testimony will not show any evidence to support the factors required by the law in West Virginia to prove the value of debtor's services. (JA 271-298). If anything, Mr. Regan refused, did not know, or deferred to the senior partner of his firm, Mr. James. G. Bordas, Jr. id. As confirmed by Mr. Bordas, the Debtor's post-petition work on the case clearly included continually preparing for trial for a necessary and successful resolution of the Falls case in order for Debtor to earn the Falls fees in question.id

Brief Summary of Argument

The Bankruptcy Court failed to apply the plain meaning of the Bankruptcy Code that excepted the Falls executory contract from the bankruptcy estate. The Bankruptcy Court found that the Debtor's asset was executory and non-assumable by the Trustee. The Trustee never attempted to assume Debtor's contingent fee agreement within 60 days as required by bankruptcy law. By failing to assume Debtor's contingent fee agreement, the Trustee was permitted to argue

or challenge the pre-petition value of Debtor's contingent fee agreement. Consequently, the Bankruptcy Court improperly converted Debtor's non-bankruptcy asset to an asset to be administered, which allowed the Trustee to contest the value in an action the Bankruptcy Court ruled under a turnover action or pursuant to 11 U.S. C. §§541 and 542.

Even if this Court finds that the Trustee had standing to continue challenging the value of Debtor's asset long after the 60 day expiration for the Trustee to assume Debtor's executory contract in full with all benefits and liabilities, the value of the Debtor's asset in question, the Falls contingent executory contract had no value that exceeded one dollar at the time the Debtor filed the Chapter 7 petition under West Virginia law based upon a contract or quantum meruit theory of recovery. Under bankruptcy law, the Trustee had the burden to prove by a preponderance of evidence that at the time of Debtor's filing, the fair market value of this asset exceeded one dollar under West Virginia substantive law.

Based upon West Virginia law that exceeds 100 years, the Trustee failed to prove any value that exceeded the value

stated by Debtor. Consequently, the Bankruptcy Court committed reversible error by not following well-established Bankruptcy law and West Virginia law to determine the value of Debtor's asset at the time of filing his petition. Based upon relevant Bankruptcy law and West Virginia law, if the Bankruptcy Court's order entered on April 26, 2013 and affirmed by the District Court on March 3, 2014 are not reversed, the lower Courts will wipe out over 100 years of West Virginia law as no attorney seeking quantum meruit would ever be able to comply with the legal standards set forth or by the reasoning set forth by the lower Courts' rulings.

The Bankruptcy Court further permitted the Trustee to improperly argue and assert an equity claim and a declaratory action in direct violation of the Federal Rules of Bankruptcy Procedure. To assert equity or a declaratory action, a separate adversary proceeding must be filed. This was not done. This caused extreme economic hardship to Debtor by violating his due process rights. Debtor was not given an opportunity to fully address equity or a declaratory action. The extreme impact of identity theft that ultimately led to Debtor's

bankruptcy was never considered by any court. The identity theft facts, among others, were not considered by the Bankruptcy Court in the alleged equity claim and declaratory action asserted by the Trustee because no adversary proceeding was filed by Trustee.

**ISSUES AND ARGUMENT**

**I: WHETHER THE LOWER COURTS COMMITTED ERROR BY HOLDING THAT THE DEBTOR'S ENTIRE POST-PETITION EARNINGS FROM A PENDING ATTORNEY-CLIENT CONTINGENT FEE AGREEMENT BELONGED TO THE BANKRUPTCY ESTATE PURSUANT TO BANKRUPTCY AND WEST VIRGINIA LAW.**

**ARGUMENT**

Debtor's pending state attorney-client contingent fee agreement found to be executory and not assumed by the Trustee within 60 days should never have ever been included in the bankruptcy estate to be administered by the trustee pursuant to *11 USC § § 365(c)(1)(A), 365(d)(1)* and *11U.S.C.§ 541(a)(6)*.

The lower courts and trustee do not deny that the falls contingent fee agreement was executory and non-assumable by trustee and in fact was not assumed by the trustee within 60

days pursuant to *11 U.S.C. 365(c)(1)(A)* and *11 U. S.C. 365 (d)(1)*. Further, as expressed in *In re Vecchitto*, 235 B.R. 231 (Bankr. Conn., 1999)

"The trustee has an affirmative duty to assume or reject an executory contract even if not properly listed on Debtor's schedule. *Cheadle v. Appleatchee Riders Ass'n (In re Lovitt)*, 757 F.2d 1035, 1041 (9th Cir.1985), cert. denied, 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985) (holding that, under the *Bankruptcy Act*, trustee has an affirmative duty to investigate for unscheduled executory contracts and that the statutory presumption of rejection of such contracts not assumed within 60 days is conclusive); *Carrico v. Tompkins (In re Tompkins)*, 95 B.R. 722, 724 (9th Cir. BAP 1989) (quoting Lovitt and adopting its holding in a Chapter 7 case under the Bankruptcy Code); *Affordable Efficiencies, Inc. v. Bane (In re Bane)*, 228 B.R. 835, 840 (Bankr.W.D.Va. 1998) (same)".

The Debtor also relies upon the specific provision of *11U.S.C.§ 541(a)(6)* that " excepts such earnings from services performed by an individual debtor after commencement of the case."

The asset in question is an attorney-client contingent fee agreement (JA 182-183) that was pending in Marshall County, West Virginia at the time Debtor filed his petition referred to as the Falls case. The Falls Case initially arose in May 1989 with the underlying personal injury case resolved in September, 1999 with only the Debtor representing Ms. Falls.

The Debtor entered into a fee sharing agreement with another law firm to prosecute additional claims related to the Falls Case where the Debtor attorney had continuing ethical and contractual duties to Ms. Falls, the client, and to the law firm of Bordas and Bordas. Thereafter, on September 25, 2000 the first party bad faith claim was filed in Marshall County, West Virginia. (JA 198-201)

Debtor attorney had to satisfy the contractual duties related to the contingent fee agreement with his client and the referring agreement with Bordas & Bordas in order to claim any attorney's fees pre-petition and post-petition.  In addition, the Debtor-attorney was subpoenaed and became a material witness in the case. The Falls case settled on the eve of trial almost 3 months after Debtor filed for bankruptcy. *Id.at page200*

At the time of Debtor Chapter 7 filing, there was no offer of any money or other consideration on the table to settle the Falls case. *Id at 200.*.

With no offer pending, the clear and unambiguous terms of the contingent agreement dictates that Debtor and no

other attorney had a vested contractual right to any money from their client, Ms. Falls, pre-petition, under West Virginia law.  Further, pursuant to the contingent fee contract, post-petition, the lawyers had to continue to perform their assigned duties to be able to recover attorney's fees contractually and ethically under West Virginia law.

Nowhere in the Falls contingent fee agreement are specific duties assigned to any one lawyer. The client obviously relied upon the attorneys to work on her case until reaching an agreed upon settlement or judgment.  Simply stated, until there was an agreed upon settlement or judgment, payment of attorney fees did not vest.

As explained and specifically enumerated by the senior partner of Bordas & Bordas the Debtor was entitled to a split "based upon the duties expected of the referring attorney to completion of the case referred";  that "completion of a case referred means a resolution by way of an award or successful settlement and payment on money cleared by the bank holding the firm's trust account;" that over the years, 12 to 13,  Bordas & Bordas has entered into the same referral agreements with

Debtor all with successful outcome as a result of working together as a professional team." *id at 199-200*

Further, as explained by Mr. Bordas, "After reviewing the Falls case, Bordas & Bordas was responsible for preparing the Falls case as attorneys of record. On the other hand, the Debtor's "duties included among other matters assisting the attorneys and other employees at Bordas & Bordas with critical historical facts regarding Debtor's client, Ms. Falls, and review of many depositions, exhibits and other documents related to the case." In addition, the Debtor's ongoing duties included the long procedural history from 1989 related to the underlying case resolved in Ms. Falls favor and which formed the basis of most if not all of the bad faith claims in the civil action filed in Marshall County, West Virginia on September 25, 2000, case number 00-C-200" *id at 199 -200*

Furthermore, that Debtor's continued duties included his own preparation to testify and be fully prepared to be called as a witness or hostile witness by the defendants for a two week trial set for trial to begin March 12, 2012. In order to fully comply with Debtor's shared duties, the Debtor "made

arrangements to stay at a hotel in Wheeling during the trial as would be expected under the agreement in the Falls case. *id at 200*.

As clearly expressed by Mr. Bordas, the fee at issue was "earned in accordance with our respective duties necessary for a successful resolution otherwise Bordas & Bordas would not have paid or agreed to pay Debtor the amount of money at issue in this action, which I understand to be $690,000.00. *id 200-201*

Like the Debtor employee in the Michigan case, *Sharp v. Dery*, 253 B.R. 204 (W.D. Mich., 2000), the Debtor's post-petition earnings were conditional. In *Sharp,* the Court following Michigan law, first looked to determine "whether debtor had an enforceable right to receive the bonus check when he filed his petition." While the Court found that the amount of the bonus was predetermined, the employer had "discretion as to whether it would pay any bonus at all" so the question became "whether a bonus plan under which debtor had no contractual right to payment on December 21, 1997 (date of filing) gave debtor an enforceable right to the bonus

check he would eventually receive in February, 1998." (id)

For guidance the *Sharp* Court stated that *Vogel v. Palmer (In re Palmer)* 57 B.R. 332 (Bankr. W.D. Va. 1986) was "squarely on point."  As pointed out by the *Sharp* Court, in *Vogel*,

> the debtor received a bonus from his employer roughly six months after he filed his bankruptcy petition. See id. at 332. As the court below noted, there were three salient facts that led the Vogel court to conclude that the debtor had no enforceable interest in the bonus when the case began, and the post-petition bonus thus was not property of the bankruptcy estate: (1) for the debtor to receive the bonus, the employer had to employ him at the time it declared the bonus; (2) "to be eligible for the bonus, the debtor had to satisfactorily perform his job"; and (3) payment of the bonus was solely at the employer's discretion.

The *Sharp* Court concluded that that in accordance with the "facts stipulated in this case, all three of the critical factors that led the *Vogel* court to hold that the post-petition bonus was not property of the estate exist here." (*Sharp, supra*)

The *Sharp* court recognized that *Vogel* was not binding on it, but found

> "its reasoning is consistent with the well-established principle that when post-petition income "is dependent upon the continued services of the debtor subsequent to the petition, the amounts do not constitute property of the estate." *Vogel*, 57 B.R. at 334; see also *In re Kervin*, 1,9 B.R. 190 (Bankr.S.D.Ala.1982) (holding that an insurance salesman's

right to renewal premiums was not part of the estate because it was contingent upon generating new business and providing policyholder services); *McCracken v. Selner (In re Selner)*, 18 B.R. 420, 421-22 (Bankr. S.D.Fla.1982); cf. *Tennessee Valley Authority v. Kinzer,* 142 F.2d 833, 838(6th Cir.1944) (holding that at the time of filing for bankruptcy debtor had no interest in contributions he could not enforce).

The *Sharp* Court also pointed out that

" The post-petition services that a debtor need perform in order to trigger this rule are, moreover, exceedingly slight. *In Matter of Hayne*s, 679 F.2d 718 (7th Cir.1982), for example, the Seventh Circuit held that the pay of a military retiree was not part of the bankruptcy estate, because it was conditioned on his obligation to perform certain military duties if called upon to do so. See *id.* at 719. The *Haynes* court cited no example of the debtor ever actually having had to perform such an obligation. See *id.* at 718-19. It merely reasoned that because the debtor "remained subject to the Uniform Code of Military Justice ... and could be recalled to active duty" in an emergency, his retirement pay was dependent upon continued services subsequent to the petition, and thus did not constitute property of the estate. *Id.* at 719.

Noticeably, the *Sharp* Court rejected the very case the lower courts relied upon in this appeal, *Towers v. Wu (In re Wu)*, 173 B.R. 411 (9th Cir. BAP 1994), for three reasons as follows:

First, apportionment would be contrary to the plain language of § 541. That statute, in pertinent part, dictates that only "legal or equitable interests of the debtor in property as of the commencement of the case" are included in the bankruptcy estate. *11 U.S.C.A. § 541(a)(1)* (emphasis added). Regardless of how rooted Debtor's bonus might have been in prepetition activities, he had, for reasons discussed above, no "legal or

equitable interests" in that dividend when the case began on December 21, 1998. Under the clear language of the statute, therefore, the Court cannot apportion any part of that bonus dividend to the estate.

Even if the text were unclear, legislative history would provide a second reason for this Court's conclusion. As both the House of Representatives and Senate Reports make plain, § 541 "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." *H.R. Rep. 95-595*, at 367 (1977), *U.S.Code Cong. & Admin.News 5963*, at 6323 (1977); *S.Rep. No. 95-989*, at 82 (1978), *U.S.Code Cong. & Admin.News 5787*, at 6043 (1978). A trustee, moreover, "could take no greater rights than the debtor himself had" on the day of filing the bankruptcy petition. *H.R. Rep. 95-595*, at 368 (1977), *U.S.Code Cong. & Admin.News 5963,* at 6323 (1977); *S.Rep. No. 95-989,* at 82 (1977), U.S.Code Cong. & Admin.News 5787, at 6043 (1978). Applying Congress's rationale, as revealed through the House and Senate reports, to these facts, the Court notes that at the "commencement of the case," neither the terms of the bonus plan nor Michigan law gave Debtor an enforceable part of the bonus dividend. Section 541 of the Bankruptcy Code does nothing to change that. It follows, therefore, that Trustee, who could take no greater rights in the property than Debtor had, also had no enforceable interest in the bonus dividend at the case's beginning. The Court, accordingly, may apportion no part of the bonus plan to pre-petition services and allot that portion to the estate.

The third reason that this Court decides it cannot apportion the part of Debtor's bonus attributable to his pre-petition services to the estate is that the chief decisions upon which the Wu court relied are consistent with such a holding. In *Wu*, the Bankruptcy Appellate Panel of the Ninth Circuit noted that, in cases dealing with insurance-renewal commissions vis-a-vis § 541, courts generally "make the entire analysis turn on the presence of a requirement of post-petition services ... if there is such a requirement, all of the renewal commissions will be excluded from the estate." *Wu*, 173 B.R.

at 414. Citing *FitzSimmons v. Walsh*, 725 F.2d 1208 (1984) and *Rau*, however, the *Wu* court rejected this all-or-nothing approach. See Wu, 173 B.R. at 414-15. But *FitzSimmons* and *Rau* do not support apportionment in these circumstances. Both of those cases are not, moreover, inconsistent with the principle that when post-petition income "is dependent upon the continued services of the debtor subsequent to the petition, the amounts do not constitute property of the estate." *Vogel*, 57 B.R. at 334.

"The *Wu* court, citing *FitzSimmons* and *Rau*, concluded that apportionment was appropriate in a case in which the debtor had to perform post-petition services to obtain payment; i.e., it applied apportionment to a property interest in which the debtor had no enforceable claim on the petition date. This Court has analyzed *FitzSimmons* and *Rau*, concluding that neither case requires such a result. Because the Wu court seems to have based its rationale on defective premises, this Court does not find Wu to be persuasive regarding the issue of apportionment." *Sharp, supra*

"The plain text of *§ 541(a)(1)* does not allow for apportionment, and apportionment would be contrary to Congress's intent. What authority there is to the contrary, moreover, is unpersuasive. The Court may not, therefore, apportion Debtor's bonus dividend. See *Vogel*, 57 B.R. at 336-

21

37; cf. *In re Rundlett,* 15,3 B.R. 126 (S.D.N.Y.1993) (refusing to apportion proceeds received post-petition)". *Sharp, supra.*

*West Virginia Code § 30-2-15* controls these types of contracts and specifically provides: "an attorney shall be entitled for his services as such to such sums as he may contract for with the party for whom the services rendered; and, **in absence of such contract,** he may recover of such party what his services were reasonable worth." (Emphasis added) Contingency fee agreements must also comply with *Rule 1.5, of the Rules of Professional Conduct.*

Without question, the Debtor had critical and continuing post-petition duties to conclude in order to claim any attorney's fees. Just like the employees in Michigan and Virginia, the Debtor had employee duties, in the form of legal duties, ethically and contractually agreed to as spelled out in Mr. Bordas' affidavit that if not continued until final resolution of the Falls case, would result in the loss of any claim for the attorney's fees at issue. Debtor's assertion to any portion of the Falls settlement was conditioned and was not vested at the time of filing.

In West Virginia, if an attorney abandons his legal duties to his or her client without just cause, there is no claim for attorney's fees based upon the contingent fee agreement and questionable relief under a quantum meruit theory.(See *Neely v. Zimmer* (S.D. W. Va., 2012)( affirmed by 4th Circuit, 2013) Equally, if Debtor did not perform professional services expected from the law firm of Bordas & Bordas consistent with their custom and practice, Bordas & Bordas may not have paid Debtor any amount initially agreed to or a much smaller amount, which is only theoretical for purposes of showing this Court the similarity  to *Sharp* and the line of cases *Sharp* relied upon and rejected or distinguished.

The Bankruptcy Court also overlooked that Debtor's-client, not Debtor or Bordas and Bordas, makes the final decision on whether to accept an offer of settlement. (See *West Virginia Rules of Professional Conduct specifically Rule 1.2. Scope of Representation*,    Debtor's client and to a certain extent the law firm of Bordas & Bordas were employers of Debtor.

Accordingly, the Falls fees were exempt from the Bankruptcy Estate pursuant to *11 U.S.C. § 541(a)(6)*. These same fees erroneously awarded to the bankruptcy estate could only have based upon contract recovery post-petition not quantum meruit pre-petition. The Falls fees did not vest pre-petition pursuant to the Falls contingent fee agreement.

To apply quantum meruit analysis, the lower Courts applied a standard of law not recognized by any bankruptcy case following West Virginia law to show how Trustee proved by a preponderance of evidence that the value of Debtor's pending contingent fee agreement with Falls and Bordas & Bordas had a value of $690,000.00 pre-petition.

Pursuant to *11 U.S.C. §541(a)(6)* and consistent with *11 U.S.C. §365(c)(1)(A)* and *11 U. S.C. §365 (d)(1)*, the Trustee had no authority to assume the Falls contingent agreement and the post-petition earnings were excluded from the bankruptcy estate because Debtor had to continue his contractual and ethical duties post-petition. Under each or all of the plain meanings of these bankruptcy codes, the lower courts erred by holding that all of Debtor's post-petition

earnings belonged to the bankruptcy estate to be administered by the Trustee.

The Debtor is aware that attorneys in West Virginia and in most states have potential quantum meruit rights to seek recovery of attorney's fees after termination of a contingent fee agreement and before recovery. This specific issue will be addressed more fully in the following issue and argument.

Although not squarely addressed in this Court, in a similar case, *In re Tonry*, 724 F.2d 467 (5th Cir.1984), the court held that notwithstanding the quantum meruit rights, inability to assume the personal services contract precluded the estate from claiming the quantum meruit claim. The *Tonry* Court ruled that the Trustee could not assume the attorney-client executory contract under bankruptcy law citing *11 U.S.C. § 365(c)(1)(A)*.

Seven years later, in an opinion written by the same judge in *In re Tonry*, the 5th Circuit allowed the trustee to claim the value of the debtor attorney-client contingent fee but only to the extent proven under quantum meruit based upon

Louisiana law. *Turner v. Avery (In re Avery)*, 947 F.2d 772, 774 (5th Cir. 1991)

The lower Courts' reasoning in this action is similar to the lower Courts' reasoning in *Turner*, **which were rejected**. In *Turner*, the trustee argued that the debtor attorney failed to prove which portion of the fees was earned prior to filing of the bankruptcy petition. The district court affirmed but the 5th Circuit vacated the orders finding that "contingent fee contracts are nonassumable executory contracts that do not become part of the bankruptcy estate. Only that portion of the contingent fee contract earned prior to the filing of the bankruptcy petition falls into that estate."

It is important to note that the *Turner* Court did not award the trustee any sum for quantum meruit value. Rather, the *Turner* Court remanded holding that

"Of critical importance in the case at bar is the assignment of the burden of proof. The matter at bar qualifies as a turnover action. As the representative of the bankruptcy estate in a turnover action the trustee has the burden of proving the partnership interest which, in this case, translates

to the trustee's obligation to prove the value of the legal services provided in each case prior to the date of the filing of the bankruptcy petition. See *11 U.S.C. § 323; In re Goodson Steel Corp.*, 488 F.2d 776 (5th Cir.1974); In re S.*E. Hornsby & Sons Sand & Gravel Co.,* 57 B.R. 909 (Bankr.M.D.La.1986)… In summary we hold that the contingent fee contracts at issue, as executory contracts, do not fall into the bankruptcy estate, but that fees earned thereon prior to the date of the filing of the bankruptcy petition do. It is incumbent upon the trustee to establish the value of these services. "

Even though quantum meruit is available in an unresolved contingent fee case, in a Chapter 7 matter, the above Bankruptcy laws prevent this asset from becoming a part of the bankruptcy estate; and to the extent permitted, there are state and bankruptcy laws that govern to determine how much, if any, quantum meruit value is allocated or becomes part of the bankruptcy estate.

For the above reasons, the Debtor respectfully requests that this Court vacate the lower Court's rulings and restore all

27

of the Debtor's post-petition earnings in the Falls case to him pursuant to the plain language of the bankruptcy code and cases supporting these *Bankruptcy Code* provisions.

## II. WHETHER THE LOWER COURTS COMMITTED ERROR BY ALLOWING THE TRUSTEE TO OBJECT TO AN ASSET THAT WAS NEVER PART OF THE BANKRUPTCY ESTATE BY MISAPPLYING 11 USC § §541 AND 542 IN CONTRAVENTION OF 11 U.S.C. §541(A)(6), 11 U.S.C. §*365(C)*(1)(A) AND 11 U. S.C. §365 (D)(1)

### ARGUMENT

The lower courts committed error by allowing the trustee to object to an asset that was never part of the bankruptcy estate by misapplying *11 U.S.C. § §541 and 542* in contravention of *11 U.S.C. §541(a)(6), 11 U.S.C. §365(c)(1)(A)* and *11 U. S.C. §365 (d)(1).*

To the extent *11 U.S.C. §541(a)(6), 11 U.S.C. §365(c)(1)(A)* and *11 U. S. C. §365 (d)(1)* do not protect the Debtor's post-petition earnings from the bankruptcy estate, the Debtor acknowledges that in West Virginia, for at least 140 years, a lawyer dismissed from a contingent fee agreement before the contingency occurs is entitled to relief based upon a quantum meruit theory. Nevertheless, for the following

reasons, as a matter of law, the Debtor's asset in the question, the Falls contingent fee agreement, had no value at the time of filing in accordance with relevant Bankruptcy and West Virginia law.

In this action, there is no evidence or suggestion that Debtor was dismissed with or without cause. For purposes of discussion, and pursuant to Bankruptcy law, the date Debtor filed his Chapter 7 petition created a legal fiction of dismissal without just cause that may entitle the Debtor to quantum meruit relief or to justify a value that exceeds $1.00 as reflected on Debtor's schedules.(JA 38 and 40). In reality, the Debtor continued to work on the Falls' case until final resolution post-petition in accordance with the contingent fee agreement with his client and fee sharing agreement with Bordas & Bordas. (See JA pp 198-201, 221-222)

In West Virginia, a lawyer dismissed without just cause has two methods of recovery in a contingent fee agreement. One is based upon the express contract terms and conditions, supported by *West Virginia Code §30-2-15* and *Rule 1.5 of the West Virginia Rules of Professional Conduct.* Since Debtor

has addressed the facts and law regarding the value of the Falls' contingent fee under a contract theory to have no value above, the Debtor incorporates and restates his authority and facts under this issue.

The other method is based upon a quantum meruit theory. The quantum meruit value of the Debtor's claim is also without value for these reasons. (1)The burden of proof rests with the Trustee to prove quantum meruit value of Debtor's contingent fee agreement in the Falls' case. As pointed out by the lower courts and well established bankruptcy law, the Trustee has the burden to prove by a preponderance of evidence the value of Debtor's quantum meruit claim at the date and time Debtor filed his Chapter 7 petition. See *Turner v. Avery (In re Avery)*, 947 F.2d 772, 774 *(5th Cir. 1991); Bailey v. Suhar (In re Bailey)*, 380 B.R.486, 490 (B.A.P. 6th Cir. 2008); (JA 236, 403) and, (2) The Trustee, under West Virginia law, failed to produce any evidence to satisfy any quantum meruit value.

As Judge Flatley plainly stated, "While *§ 541(a)* provides what interests of the debtor become property of the

estate, state law determines the existence and scope of the debtor's interest in a particular asset as of commencement of the case. *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit),* 217 F.3d 1072, 1078 (9th Cir. 2000). (JA 236) 'This Circuit follows the same rules. See *Beaman v Shearin*,  224 F.3d 353 (4th Cir. 2000). In bankruptcy cases, the date of filing is considered the termination date of an attorney-client agreement to determine value.(*Turner, supra; In re Carlson*, 263 F.3d 748 (7th Cir., 2001).

"An attorney discharged by a client "without cause can recover on the contingent fee contract or in quantum meruit." *Kopelman and Associates, L.C. v. Collins,* 473 S.E.2d 910, 916-17 (W.Va.1996); see, e.g., *Statler v. Dodson,* 466 S.E.2d 497, 505 (W.Va. 1995); *Clayton v. Martin*, 151S.E. 855, 856-57 (W.Va. 1930). And attorneys discharged with cause can recover in quantum meruit for the services rendered up until the time of termination. *Kopelman*, 473 S.E.2d at 917." Id. at pg. 5 "**[I]n the absence of evidence, no recovery**

**can be had" even in a quantum meruit claim**. *(Kopelman, supra,* citing *Martin*, 108 W.Va. 571, 151 S.E. 855 (1930); citing *Polsley & Son v. Anderson,* 7 W.Va. 202, 23 Am.Rep. 613 (1874).  (Emphasis added)

In West Virginia, there are three primary causes of action used to recover attorney's fees based upon quantum meruit; attorney v client; attorney v attorney; or attorney v third party. For each cause of action, the West Virginia Supreme Court of appeals has mandated that the reviewing court consider a number of factors to arrive at a fair compensation to the attorney. The West Virginia Supreme Court has also made it clear that "the reviewing court make specific findings of fact to support the factors in a claim for attorney's fees. ( *Kopelman, supra*). Further, that the "**evidence cannot be based upon conjecture**" (*Stafford v Bishop,* 127 S.E. 501 (1925) (Emphasis added)

*Kopelman* was a quantum meruit lawsuit between attorneys, and the court laid out a minimum of 9 factors the court must consider when determining the reasonable attorney's fee.  The factors are as follows:

"(1) the relative risks assumed by each firm; (2) the frequency and complexity of any difficulties encountered by each firm; (3) the proportion of funds invested and other contributions made by each firm; (4) the quality of representation; (5) the degree of skill needed to achieve success; (6) the result of each firm's efforts; (7) the reason the client changed firms; (8) the viability of the claim at transfer; and (9) the amount of recovery realized. This list is not exhaustive, and a circuit court may consider other factors as warranted by the circumstances in addition to awarding out-of-pocket expenses" Id.

In a case where there is a dispute between attorney and client, as early as 1925, the West Virginia Supreme Court of Appeals in *Stafford v Bishop*, 127 S.E. 501 (1925) noted that the value of services performed by the prior attorney **must be specifically demonstrated and not left to conjecture.**(Emphasis added)  In *Stafford*, the Court set forth factors to consider when determining the value of a lawyer's services based upon quantum meruit. The West Virginia Supreme Court adopted these factors as reflected in the *West Virginia Rules of Civil Procedure in Rule 1.5.  Fees.* (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to

perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services, and; (8) whether the fee is fixed or contingent.

Although the facts of this case do not involve seeking quantum meruit against a third party using the factor tests, for the Court's full understanding, even in third party type cases the West Virginia Supreme Court of Appeals set forth the following factors that must be considered at a minimum to make a proper quantum meruit award:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." A*etna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986),

Based upon the only evidence presented by the Trustee on December 20, 2012 the Bankruptcy Court record is void of

34

any facts that support any of the factors set forth in any West Virginia case or under the Rules of Professional Conduct. The Trustee's sole witness was attorney Christopher James Regan. A thorough review of Mr. Regan's entire testimony will not provide any evidence to satisfy any of the factors necessary to support any claim for quantum meruit value.  (JA 277-298). This lack of evidence explains why the lower Courts did not make specific findings of fact to support any of the factors necessary to determine the quantum meruit value of the Debtor's asset pre-petition or up to the time of filing, which was January 5, 2012.  "**Evidence cannot be based upon conjecture"** (*Stafford*, *supra*) (Emphasis added)

At the December 20, 2012 hearing before the Bankruptcy Court, and after listening to Trustee's sole witness, attorney J. Michael Benninger was called by the Debtor to express opinions related to the value of the Falls' case at the time Debtor filed his Chapter 7 petition. Mr. Benninger has been a practicing attorney since 1985; has "tried about every kind of case including first party bad faith insurance cases; represents lawyers in disciplinary matters,

counsels other lawyers about contingency fee issues and has taught at WVU Law School for a number of years regarding contingent fees and ethical implications.(JA 320)

Before expressing any opinions on direct, the Trustee requested to voir dire Mr. Benninger. In response to one of the Trustee's voir dire questions, and referring to the Falls case, Mr. Benninger stated that he had "opinions that there was zero value on January 5, 2012, the date of filing in this case." (JA 325) Further, Mr. Benninger acknowledged affirmatively, in responding to the Trustee's voir dire questions regarding one of his opinions "And then your opinion is that it would be unethical and in violation of the contingency fee agreement expressing the Debtor's legal rights to recreate time an billing records after the fact. Is that your opinion?"(JA 326)

After qualifying Mr. Benninger as an expert on certain matters, Mr. Benninger further explained the lack of evidence to support a finding of value based upon quantum meruit. As expressed by Mr. Benninger:

"Factually, sir, important documented facts or stipulated facts or established facts would include that we had not yet seen any written letter that deals with the issue of Bordas &

Bordas versus Scotchel whereby his alleged 40 percent of the ultimate fee was derived and what work he was required to do, asked to do, expected to do. There are also the facts in this case are that no attorney was discharged with or without cause, no death of an attorney, no attorney withdrew. And so none of those things occurred here. The only thing that occurred is there was a filing. There was no divorce filed. There was no triggering event, if you will, factually that would cause anyone in Mr. Scotchel's mind to immediately start to keep time and billing records or other records from which he could reconstruct a quantum meruit claim if he had the right to do it, if he should have do it at any time. And so the ultimate trouble is, it's really a factual and legal impossibility to be able to determine value with[out] those data. Regan couldn't provide it. In this record that I've seen, it doesn't exist. (JA 346-347)

Rather than make findings of fact relevant to the issue of quantum meruit using West Virginia law factors, which the Trustee failed to provide or submit, the lower Courts and the Trustee were only focused on alleged post-petition specific duties not contemplated to be performed by the Debtor. (JA 238 and 397). Mr. Bordas' affidavit was not submitted until January 25, 2013.(JA 220-223). Mr. Bordas' affidavit answered some of Mr. Benninger's questions of December 20, 2012 and as explained above under issue I.

To follow the Trustee's argument or to affirm the lower Courts' orders would overrule 140 years of West Virginia law which allows any attorney to file a quantum meruit claim for

these primary reasons.  In most, if not all, of the quantum meruit cases filed in West Virginia against a former client or another attorney, the attorney seeking quantum meruit relief has stopped working on the case. **If West Virginia courts focused on post termination work or duties of the attorney discharged with cause or without cause, no attorney would ever be able to claim quantum meruit damages.**

*Kopelman* was properly followed in the Southern District of the United States District Court of Southern West Virginia in 2005 in a quantum meruit case.  In *Abramson ex rel. Estate of Abramson v. Laneko Eng.,* 370 F.Supp.2d 498 (S.D. W. Va., 2005) the Court made specific findings of fact by applying the *Kopelman* factors.  The plaintiff in *Abramson* was the previous law firm seeking damages from the subsequent law firm who literally took over all aspects of the client's case through final resolution. More importantly, if the lower Courts' analysis was followed in *Abramson*, the Plaintiff would not have recovered because the plaintiff law firm admitted to performing no legal work post termination and obviously had no attorney-client duties to perform.

The plaintiff in *Abramson* was awarded substantial quantum meruit fees despite the undisputed fact that there was no work performed post termination. Applying the unprecedented analysis used by the lower Courts in this action, the plaintiff in *Abramson* or any other attorney seeking quantum meruit damages would be shut out from recovery wiping out 140 years of West Virginia law.

This is apparently the reason Trustee and lower Courts could not find any West Virginia case or law to support the Trustee's argument regarding specific post-petition work to support the lower Courts' orders regarding the Falls agreement.

The Trustee did cite a West Virginia domestic relations case to assert his position, but, even that case recognizes, that the value of debtor's pre-petition asset "should be based upon quantum meruit." (*Metzner v Metzner,* 191 W.V 387, 446 S.E.2d 165 (1994). (JA 225). Even under *Metzner*, as quoted by the Trustee, the West Virginia Supreme Court pointed out that "only that portion of the fee that represents compensation for work done during the marriage is marital property".

Again, the Trustee, not the Debtor, would still have the burden to prove the quantum meruit value by a preponderance of evidence of the Falls contingent fee case at the time of Debtor's filing.(*Turner, supra*)

From the evidence presented, the fee at issue could only be supported by contract law, which required the Debtor to continue his post-petition duties as set forth in the undisputed affidavit of Mr. Bordas. (JA 198-201). Similarly, applying the same evidence to the contract, the debtor's fee had no value at the time of filing. This fact is undisputed by the Trustee and Bankruptcy Court. Further, since the Debtor was obligated to provide services to his client post-petition, without compensation until a favorable resolution for Ms. Falls, including testifying as a material witness, the Trustee should not be entitled to the Debtor's post-petition efforts. Otherwise, the Trustee would receive a windfall for doing absolutely nothing and incurring no liability as required if the executory contract assumed. It was the Debtor, co-counsel and Ms. Falls who had to gamble knowing that the Debtor, co-counsel and

Ms. Falls would receive nothing unless a settlement or verdict was reached in their favor.

If long standing Bankruptcy law is followed, which allows the Debtor to start fresh and work on a case on the same personal service contingent fee agreement further risking his time and almost three months of work, then the Trustee should not benefit from the Debtor's labor.

The Bankruptcy Court's misapplication of the law, or misapplication of the facts as applied to the law, resulted in the Bankruptcy Court's error that granted all of Debtor's post-petition earnings to the Bankruptcy Estate. This erroneous ruling denies the Debtor the right to earn money post-petition and is not consistent with well-established bankruptcy law, giving the Debtor a fresh start after filing bankruptcy petition.

For the above reasons, the Debtor respectfully requests that this Court vacate the lower Court's rulings and restore all of the Debtor's post-petition earnings in the Falls case to him for the Trustee's failure to produce any evidence to support any of the factors necessary under West Virginia law to place a value exceeding the pre-petition value of $1.00 based upon a

quantum meruit theory. Further, that the lower Courts' committed errors by abusing their discretion by failing to make any findings of fact that support any of the factors required under West Virginia law to place any value on the Falls contingent fee case using a quantum meruit theory.

**III. WHETHER, AND TO THE EXTENT RELIED UPON BY THE LOWER COURTS, THE TRUSTEE'S FAILURE TO FILE AN ADVERSARY PROCEEDING TO ASSERT EQUITY AND DECLARATORY RELIEF WRONGFULLY DENIED DEBTOR THE OPPORTUNITY TO ADDRESS THESE NON FILED ACTIONS THAT CAUSED EXTREME MONETARY PREJUDICE TO THE DEBTOR IN THE AMOUNT OF $690,000.00.**

## ARGUMENT

The plain language of Rule 7001(7) and (9) of the FRBP state as follows:

PART VII—ADVERSARY PROCEEDINGS

Rule 7001. Scope of Rules of Part VII

An adversary proceeding is governed by the rules of Part VII. The following are adversary proceedings:

(7) a proceeding to obtain an injunction or other equitable

relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or

The parties knew that the record was left open for limited matters, and to the extent this Court gives any credence to the order underlying this appeal that refers to the Trustee's assertions of equity or a declaratory action should not be considered. To do so would deprive the Appellant of the right to fully address properly filed adversary proceedings. For example, Appellant's response to these non-filed adversary proceedings would have to include evidence from a CPA, the negative effects of identity theft, the detailed examination of debts disputed on the schedule, countless loans paid for over 40 years that far exceed the amount Appellant and his wife listed to be discharged, and other relevant evidence to defend against any such claims. Denying the Appellant the right to defend against improper claims violates his due process rights. Therefore, to the extent this court

adopts any reasoning of the Bankruptcy Court based upon an unfiled adversary proceeding should be disregarded.

## CONCLUSION

Wherefore, the Appellant/Debtor respectfully requests that this honorable Court reverse the Order of the District Court affirming the Bankruptcy Court, and thereby overrule Trustee's objection to the value of Debtor's contingent fee agreement in connection with the Falls case; and that this Court Order that all of the Falls fees recovered by Debtor post-petition be returned to him; and for such other relief and this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Appellant/Debtor respectfully requests oral argument on issues I and II as Appellant understands that these issues may be issues of first impression or not squarely addressed in this Court.

Dated: May 14, 2014.

Respectfully submitted,


/s/ John Charles Scotchel, Jr.
 John Charles Scotchel, Jr.
WV St. Bar #3310
PO Box 1289
Morgantown, WV 26507
Tel:  304-292-8096
Fax: 304-292-8097
scotchel@gmail.com
Counsel for Debtor/Appellant

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 14-1301        **Caption:** John Charles Scotchel, Jr. v Martin Patrick Sheehan

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✔] this brief contains _____8,725_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ ] this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word 2010 _____ [*identify word processing program*] in
   14 point Times New Roman _____ [*identify font size and type style*]; **or**

   [ ] this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) John C. Scotchel, Jr. _____

Attorney for Appellant-John C. Scotchel, Jr. _____

Dated: May 14, 2014 _____

| Print | Save | Reset Form |
|-------|------|------------|

CERTIFICATE OF SERVICE

I certify that on May 14, 2014 the foregoing document was served on all parties

or their counsel of record through the CM/ECF system if they are registered users or, if

they are not, by serving a true and correct copy at the addresses listed

below:

Martin P. Sheehan, Chapter 7 Trustee
Of the Bankruptcy Estate of John C.
Scotchel, Jr., and Helen H. Scotchel (pro se)
WV State Bar No. 4812
Sheehan & Nugent, PLLC
41 Fifteenth Street
Wheeling, WV 26003
sheehanbankruptcy@wvdsl.net

And I hereby certify that I will mail the document by U.S. mail to the following non

filing users: None; and to the USCA4 as required.

  _/s/ John Charles Scotchel, Jr._
John Charles Scotchel, Jr.
WV St. Bar #3310
PO Box 1289
Morgantown, WV 26507
Tel:  304-292-8096
Fax: 304-292-8097
scotchel@gmail.com
Counsel for Debtor/Appellant