Case No. 14-1301

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**John C. Scotchel, Jr.**
      *Debtor-Appellant*

    **v.**

**Martin P. Sheehan, Trustee**
    **of the Bankruptcy Estate of**
    **John C. Scotchel, and**
    **Helen H. Scotchel**
      *Trustee- Appellee*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA (Keely, J.)

### BRIEF OF THE APPELLEE

Martin P. Sheehan

SHEEHAN & NUGENT, P.L.L.C.,
41 Fifteenth St.
Wheeling, WV 26003
(304) 232-1064
(304) 232-1066 fax
sheehanbankruptcy@wvdsl.net

Counsel for the Trustee

# Table of Contents

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**Disclosure of Corporate Affiliations** . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**Statement of Appellate Jurisdiction** . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

**Standard of Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

**Counter-Statement of the Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

**Statement of the Case** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

**Statement of the Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

**Oral Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

**Certificate of Service** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

**Certificate of Compliance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

# Table of Authorities

## <u>Cases</u>

<u>Bailey v. Suhar (In re: Bailey)</u>, 380 B.R. 486 (BAP 6th Cir. 2008) . . . . . . . . . . . 17

<u>In re Anderson</u>, 377 B.R. 865 (6th Cir. BAP 2007) . . . . . . . . . . . . . . . . . . . . . . 10

<u>In re: Bagen</u>, 186 B.R. 824 (Bankr. S.D. N.Y. 1995) <u>aff'd</u>
     201 B.R. 642 ((S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re Barroso-Herrans</u>, 524 F.3d 341 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 10

<u>In re: Carlson</u>, 263 F.3d 748, 750 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re Green</u>, 31 F.3d 1098,(11th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>In re Hyman</u>, 967 F.2d 1316 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>In re: Reilly</u>, 534 F.3d 173 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>In re: Robb</u>, 23 F.3d 895 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re Wick</u>, 276 F.3d 412 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>In re Williams</u>, 104 F.3d 688, 690 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Jess v. Carey (In re: Jess)</u>, 169 F.3d 1204 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . 17

<u>Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.</u>,
     756 F.2d 1043 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Massey v. Pappalardo (In re: Massey)</u>, 465 B.R. 729 (BAP 1st Cir.  2012) . . . . . 10

<u>Metzner v. Metzner</u>, 191 W.V. 378, 446  S.E. 2d 165 (1994) . . . . . . . . . . . . . . 18

<u>National Labor Relations Board v. Bildisco and Bildisco</u>, 465 U.S. 513 (1984)   21

RCI Technology Corp. v. Suntera Corp. (In re: Sunterra),
361 F.3d 257 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Schwab v. Reilly, __ U.S. __, 130 S.Ct. 2652, 177 L.Ed. 234 (2009) . . . . . . . . . 9

Taylor v. Freeland and Kronz, 501 U.S. 638 (1992) . . . . . . . . . . . . . . . . . . . . . 11

**Federal Statutes**

11 U.S.C. § 365(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11 U.S.C. § 365(e)(2)(A)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11 U.S.C. §365(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

11 U.S.C. § 365(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11 U.S.C. §522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

11 U.S.C. § 524 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11 U.S.C. §541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

11 U.S.C. § 542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 25

11 U.S.C. §704(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11 U.S.C. § 726 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Federal Rules**

Bankruptcy Rule 4003(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 25

Bankruptcy Rule 7004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Bankruptcy Rule 9014(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Bankruptcy Rule 9014(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

### State Statutes

W.Va. Code § 38-10-4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1301__     Caption: __John C. Scotchel, Jr. v. Martin P. Sheehan__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Martin P. Sheehan__
(name of party/amicus)

_____

who is __Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☒ NO

2.   Does party/amicus have any parent corporations?   ☐ YES ☒ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?   ☐ YES ☒ NO
     If yes, identify all such owners:

10/28/2013 SCC

-6-

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐ YES ☒ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☒ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?     ☒ YES ☐ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Martin P. Sheehan                          Date: 6/16/2014

Counsel for: Appellee

## CERTIFICATE OF SERVICE

June 16, 2014 ****************************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Martin P. Sheehan                          June 16, 2014

_____                       _____
        (signature)                                    (date)

## Statement of Appellate Jurisdiction

The Trustee-Appellee adopts the Statement of Appellate Jurisdiction filed by the Debtor-Appellant.

## Standard of Review

The Trustee-Appellee adopts the Standard of Review filed by the Debtor-Appellant.

## Counter-Statement of the Issues

**1) Whether the conclusion of law made by the Bankruptcy Court that the pre-petition efforts of Mr. Scotchel under the contingent fee contract created a pre-petition asset that became property of the Bankruptcy Estate when Mr. Scotchel filed for bankruptcy relief was erroneous under the de novo standard of review?**

**2) Whether the findings of fact made by the Bankruptcy Court were clearly erroneous where the Trustee offered evidence that all work done by Mr. Scotchel under the contract was done pre-petition and Mr. Scotchel failed to offer any evidence of work performed by him post-petition?**

## Statement of the Case

Appellant, and his wife, filed for relief under Chapter 7 of the Bankruptcy

Code on January 5, 2012. (Docket Entry[1] No. 1). Schedules A- J were filed on January 19, 2013. (Docket Entry No. 9).  On Schedule B -Item 21[2], the Debtors listed as an asset "Contingent Fee Agreements related to the legal practice of John Charles Scotchel, Jr." The asset was designated as an asset of "H," the husband in this joint petition. The current value of the Debtor's interest was claimed to be $1.00. On Schedule C, the Debtor claimed the same $1.00 of this asset as exempt under 11 U.S.C. §522(b)(3). That statute authorizes exemptions to be taken under state law. In this case, an exemption was claimed under W.Va. Code § 38-10-4(a). That subparagraph, in combination with subparagraph (e) authorizes a total exemption claim of $25,800 in what West Virginia bankruptcy petitioners refer to as the "wildcard."

Facially, the claim of exemption is a valid claim for an exemption of $1.00. Prior to the decision of the United States Supreme Court in <u>Schwab v. Reilly,</u> __ U.S. __, 130 S.Ct. 2652, 177 L.Ed. 234 (2009) there had been some case law[3] that

---

[1] Throughout this brief the phrase "Docket Entry No. __" should be understood to refer to Docket Entries made on the Bankruptcy Court docket sheet.

[2] Item 21 requires a debtor to list "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Estimates of the value are then required.

[3] <u>See e.g.,</u> the decision of the United States Court of Appeals for the Third Circuit which was reviewed by the Supreme Court, <u>In re: Reilly,</u> 534 F.3d 173 (3rd

provided that where a debtor listed the value of an asset for a specific dollar amount and claimed the same amount as exempt, then the debtor had signaled an intent to claim the entire asset as exempt, and not merely the amount of the dollar value of the exemption claimed. The decision in <u>Schwab</u> rejected that idea. This issue has largely been put to rest.

However, there has been continued efforts to use remarks made by Justice Thomas in the majority opinion, to the effect that where a debtor "clearly signals" the intent to claim an "in kind" exemption (one for the entire asset) then such a signal causes that to be a claim of an exemption of 100%.[4] Trustees must make an objection to a claim of exemptions with 30 days of the conclusion of the meeting

_____

Cir. 2008). Certiorari was granted because of the wide ranging disagreements among the Courts of Appeals. <u>See,</u> <u>In re Williams,</u> 104 F.3d 688, 690 (4th Cir. 1997) (holding that interested parties have no duty to object to a claimed exemption where the dollar amount the debtor assigns the exemption is facially within the range the Code allows for the type of property in issue); <u>In re Wick,</u> 276 F.3d 412 (8th Cir. 2002) (employing reasoning similar to <u>Williams,</u> but stopping short of articulating a clear rule) for one view. <u>See,</u> <u>In re Green,</u> 31 F.3d 1098, 1100 (11th Cir.1994) ("A debtor who exempts the entire reported value of an asset is claiming the [asset's] `full amount,' whatever it turns out to be"); <u>In re Anderson,</u> 377 B.R. 865 (6th Cir. BAP 2007) (similar); and <u>In re Barroso-Herrans,</u> 524 F.3d 341, 344 (1st Cir. 2008) (focusing on "how a reasonable trustee would have understood the filings under the circumstances"); <u>In re Hyman,</u> 967 F.2d 1316 (9th Cir. 1992) (applying an analogous totality-of-the-circumstances approach).

[4] <u>See</u> <u>Massey v. Pappalardo (In re: Massey),</u> 465 B.R. 7290 (BAP 1st Cir. 2012)

of creditors under Bankruptcy Rule 4003(b) or the opportunity to object is lost.

See Taylor v. Freeland and Kronz, 501 U.S. 638 (1992).

This legal environment caused the Trustee-Appellee to file an objection to the claim of exemptions to the extent Mr. Scotchel sought to claim more than $1.00 as his exemption for "contingent cases." (Docket Entry No. 39). This legal issue was joined. It was resolved in Bankruptcy Judge Flatley's opinion of October 16, 2012. There the Bankruptcy Court ruled that the claim of an exemption of $1.00 was limited to a claim of an exemption of $1.00.

As part of the reply brief filed by Mr. Scotchel, he argued that the Debtor was entitled to keep 100% of all assets he earned post-petition. See Docket Entry No. 107 at page 5. The Trustee has not challenged that view of the law, although there remains disagreement about application of the principle to the contingent fees at issue here. Docket Entry No. 256 at page 7. The order of October 16, 2013 permitted the Debtor to assert that some portion of the contingent fee at issue, the fee from the Falls case, had been "earned post-petition." (Docket Entry No. 113 at page 5).

A hearing was ultimately held on December 20, 2012 to address this issue. The burden of going forward and of persuasion was unclear. The Bankruptcy

Court assigned the burden of proof to the Trustee.[5] The Trustee called Attorney Christopher J. Regan as his witness. Docket Entry No. 256 at page 26. Mr. Regan testified that he was an attorney with Bordas and Bordas, P.L.L.C., and that he and other members of his firm had responsibility for litigation of the <u>Falls</u> case. Docket Entry No. 256 at pages 26-27. He testified that he was aware the John C. Scotchel had referred the case, and was entitled to a share in any fee that might be earned. He testified that from January 5, 2012, the date on which Mr. Scotchel filed for bankruptcy relief, until the date that the litigation settled in March of that year, he was unaware of any work done by Mr. Scotchel of any kind on the case. Docket Entry No. 256 at pages 28-30; and, 40.

Mr. Scotchel did not testify in response. Docket Entry No. 256 at pages 95; and, 115. While James G. Bordas did submit a post-hearing affidavit (without objection from the Trustee) that affidavit did not identify any work performed by Mr. Scotchel post-petition.

Instead of contesting these facts, Mr. Scotchel has claimed that because the contingency in his contingent fee agreement - settlement of the underlying litigation- has occurred post-petition, the entirety of the fee belongs to him. The Trustee disputed that conclusion, and has instead noted that the "work" performed

_____

[5] The Trustee has not challenged that decision on appeal.

-12-

to earn the fee which was done by Mr. Scotchel was done "pre-petition." That work created a contingent account receivable that was a pre-petition asset. In the view of the Trustee, the value of the contingent pre-petition account receivable might have had to have been balanced against evidence of post-petition contributions to the total fee, but the lack of evidence of a post-petition contribution made such an effort unnecessary.

The District Court accepted the Trustee's view and denied Mr. Scotchel relief in its opinion of April 26, 2013.

A timely appeal has been filed.

### Statement of the Facts

This is an appeal from an appeal. The facts were not seriously contested, although the legal conclusions to be drawn from the facts, were placed in issue by the Debtor-Appellant. There do not appear to be any facts in addition to those necessarily included in the Statement of the Case.

### Argument

**1) Whether the conclusion of law made by the Bankruptcy Court that the pre-petition efforts of Mr. Scotchel under the contingent fee contract created a pre-petition asset that became property of the Bankruptcy Estate when Mr. Scotchel filed for bankruptcy relief was erroneous under the <u>de novo</u> standard of review?**

When an individual files for bankruptcy relief, the Bankruptcy Code effects

-13-

a division what had been one thing, a person with assets, and debts and contractual relationships , in two. One of these is an artificial entity called the "bankruptcy estate of the debtor." Pursuant to 11 U.S.C. §541, this entity consists <u>inter alia</u> of "all legal or equitable interests of the debtor in property at the commencement of the case." These assets are to be reduced to cash by a trustee. 11 U.S.C. §704(a)(1). The monies are to be distributed to those with valid claims. 11 U.S.C. § 726.

What remains is the individual. The individual is entitled to extract from the property of the estate, property which is validly exempted under section 522. The person and that property becomes immune from paying dischargeable debts through a discharge. 11 U.S.C. § 524. Property earned or acquired by a person post-petition is not property of the estate in a chapter 7 case. Earnings are excluded under 11 U.S.C. § 541(a)(6). Other post-petition acquisitions are also excluded. This is most easily seen bylooking to the definition of property of the estate in 541(a)(1). It is clear that "post-petition acquisitions " did not exist "at the commencement of the case."[6]

---

[6] The statements in this paragraph are accurate and apply fully to this case. Nuances and exceptions necessary to make any one of these statements a foolproof statement of bankruptcy law in any conceivable set of circumstances would unduly lengthen this brief without any useful purpose and so has not been attempted here.

It is a simple proposition of law to say that post-petition earnings are not property of a Chapter 7 bankruptcy estate. While that principle is simple, there are circumstances in which the application of that simple principle is more difficult to apply. Issues have arisen in contexts in which an a final right to payment, or rights which did not fully vest pre-petition.

The Debtor's interest in monies earned under a contingent fee contract is exactly such an issue. There is no doubt the Debtor was a party to a contract that required him, and other lawyers with whom he had associated to exert whatever effort was necessary to assist a client in obtaining a recovery. That litigation had lasted over 11 years.  Two months after the Debtor filed for bankruptcy relief, a recovery occurred. The right to payment for all work done, pre-petition and post-petition, matured.

In these circumstances, what is at issue is the proper application of section 541(a)(1) of the Bankruptcy Code, which defines property of the bankruptcy estate as "all legal or equitable interests of the debtor in property at the commencement of the case."  Pre-petition the Debtor worked on the litigation and in so doing earned something. That something became an asset of the bankruptcy estate at filing.

That something is best described as a contingent account receivable

-15-

unliquidated as to amount at filing.  The contingency is multi-faceted. First, there was the explicit ordinary contingency, the underlying claim needed to be successfully resolved so that a fee would be due from a successful recovery for the client.  Second, because the amount of the fee was a percentage of the total recovery, that amount needed to be liquidated into a discrete figure. Third, an allocation of what was earned pre-petition versus what was earned post petition would need to be made. At the time of filing of the petition, the amount of future effort necessary to obtain a recovery for the client was an unknown variable, as was the exact amount due. All of these contingencies impacted determination of the actual value of the contingent account receivable pre-petition. But the contingencies themselves did not eliminate the existence of the pre-petition asset as the Debtor argues in his appeal.

Debtor acknowledged that he understood this to be the essential character of this asset when he listed it on Schedule B in response to the directions of Item 21. As noted earlier, that was a request for the Debtor to disclose as part of his list of personal property ,"Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." He listed, "Contingent Fee Agreements related to the legal practice of John Charles

Scotchel, Jr." He knew then this was an asset of some kind.[7]

In reliance on In re: Carlson, 263 F.3d 748, 750 (7th Cir. 2001)(Posner, J.);

Jess v. Carey (In re: Jess), 169 F.3d 1204 (9th Cir. 1999); Turner v. Avery (In re:

Avery), 947 F.2d 772 (5th Cir. 1991); Bailey v. Suhar (In re: Bailey), 380 B.R. 486

(BAP 6th Cir. 2008); and In re: Bagen, 186 B.R. 824 (Bankr. S.D. N.Y. 1995) aff'd

201 B.R. 642 ((S.D.N.Y. 1996), Judge Flatley concluded that there was a pre-

petition contingent account receivable. The Bankruptcy Judge agreed also that the

fee was subject to division into a pre-petition and post-petition component. The

Trustee contends this decision of law was correct. The District Court agreed.

Debtor attempts to challenge this view by citing cases defining when an

attorney can be paid under a contingent fee contract under West Virginia law.

These decisions are not applicable. There was no issue of the client's obligation to

pay. The client has paid. The payment was tendered to the Trustee of the

Bankruptcy Estate when the settlement was completed and the distributions were

being made. Payment was not the problem. The issue is allocation of what was

---

[7] In completing Schedule G, the Debtor did not disclose the existence of any
"executory contracts." Debtor has attempted to argue this is an "executory
attorney-client contingent fee agreement." These statements on Schedule B were
made under penalties of perjury. See, Docket Entry 10. Principles of estoppel
prohibit taking mutual exclusive and contradictory positions in litigation. See In
re: Robb, 23 F.3d 895 (4th Cir. 1994).

paid into pre-petition and post-petition components. The cases cited by the Appellant ignore this issue.

The analogous case in West Virginia is <u>Metzner v. Metzner,</u> 191 W.V. 378, 446 S.E. 2d 165 (1994). There an attorney with a substantial contingent fee practice obtained a divorce. Whether or not the potential fees from contingent fee cases were subject to division in the marriage was at issue. In any divorce in West Virginia, marital assets are subject to division at the date of separation. W.Va. Code § 48-2-1(e)(1). In discussing whether contingent fees were subject to division, the Supreme Court of West Virginia said,

> We conclude that accounts receivable are assets with a value that can be ascertained at the date of separation and are considered to be marital property for purposes of equitable distribution. Contingent and other future earned fees which an attorney might receive as compensation for cases pending at the time of a divorce should also be considered as marital property for purposes of equitable distribution. However, only that portion of the fee that represents compensation for work done during the marriage is "marital property" as defined by our statute. Because the ultimate value of a contingent fee case remains uncertain until the case is resolved, a court must retain continuing jurisdiction over the matter in order to determine how to effectuate an equitable distribution of this property.

<u>Id.</u> at 387, 446 S.E.2d at 174.

The difference between using the date of filing of a bankruptcy petition to divide contingency fees, and using the date of separation in a divorce case is immaterial. Clearly, West Virginia law recognizes such monies to be sufficient

interests in property to be subject to division in either of these circumstances. Judge Flatley relied on this case as well. So did Judge Keeley. This was not legal error of any kind.

**2) Whether the findings of fact made by the Bankruptcy Court were clearly erroneous where the Trustee offered evidence that all work done by Mr. Scotchel under the contract was done pre-petition and Mr. Scotchel failed to offer any evidence of work performed by him post-petition?**

As demonstrated above, the correct legal issue for the Bankruptcy Court to decide is the issue on which it took evidence at the hearing held on December 20, 2012. That issue was what were the relevant contributions of Mr. Scotchel to the recovery of the fee prior to the bankruptcy filing, and after the filing. These two theoretical components of the total recovery effort would then need to be balanced to determine an appropriate division of this asset. As noted, the Trustee accepted the burden of proof. Mr. Regan one of the attorneys involved in the actual litigation of the underlying case, testified that he knew of no contribution made to the case after January 5, 2012 by Mr. Scotchel. Docket Entry No. 256 at pages 28-30. Thus, the Trustee attempted to prove that 100% of the fee was attributed to the pre-petition efforts of Mr. Scotchel, and none to the post-petition period.

Although given an opportunity to rebut that evidence, Mr. Scotchel offered no contrary evidence. Docket Entry No. 256 at pages 95 and 115. Not surprisingly,

the Bankruptcy Court followed the evidence before it, and found that Mr. Scotchel "did not participate in any of the settlement negotiations, mediation sessions, legal proceedings or aid Bordas & Bordas in legal preparations after he filed for bankruptcy." Docket Entry No. 184 at page 6. The Bankruptcy Court acknowledged, as Mr. Scotchel claims, that he had post-petition duties, but found no evidence that he performed any such duty. Id. at page 6, n. 4.

While the Debtor purports to challenge the sufficiency of evidence and whether the preponderance of evidence has been satisfied, Debtor has failed to point to a specific factual finding that was not supported by evidence. There was no clearly erroneous fact finding. That conclusion was also reached by the District Court.

## Miscellaneous

The Trustee has identified the only two issues that Mr. Scotchel might legally pursue on this appeal, and believes both are wanting.  Much of what the Debtor has claimed to be error are "red herring" issues. To avoid, any question that such issues are conceded, the Trustee makes these additional comments.

## Executory Contracts

Executory contracts are generally understood to be contracts where each

party owes something to the other party to the contract.[8] One example would be where a painter contracts to paint a house for a future payment. If the painter must still paint and the homeowner must still pay, then the contract is executory. If the painting is complete, but the payment has not yet been made, the contract is no longer executory. If the payment was made in advance, but the painting is not yet done, then the contract is not executory. In both of these situations there is no remaining reciprocal obligation.  In a chapter 7 context, non-executory contracts may lead to  claims. Such claims can only  be asserted against the Bankruptcy Estate. The discharge received by an individual debtor generally prohibits any consequence to the individual Debtor.

If the hypothetical painter paints but is not paid, and the homeowner files for relief, then the painter can only make a claim for payment against the Bankruptcy Estate of the homeowner. The homeowner will get a discharge.

If the homeowner pays, and the painter does not paint and files for relief, the homeowner has a claim for his money, or perhaps the cost of obtaining an adequate substitute against the Bankruptcy Estate of the painter. The painter will

───────────────────

[8] This is generally known as the "Countryman test." <u>RCI Technology Corp. v. Suntera Corp. (In re: Sunterra),</u> 361 F.3d 257 (4th Cir. 2004); <u>Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,</u> 756 F.2d 1043 (4th Cir. 1985); and <u>National Labor Relations Board v. Bildisco and Bildisco,</u> 465 U.S. 513, 522 n.6.

get a discharge

Where a contract remains executory -that is, painting and payment remain undone - a different analysis is needed because there are alternatives. It's possible that the contract should be simply cancelled regardless of whether the painter or the homeowner files for relief. If there is no economic harm from cancellation, then that result is simple.

If the painter files and does not perform, and the homeowner then cannot find a replacement painter without paying move, then the increased expense - damages for obtaining a replacement - are suitable damages that would support the filing of a claim against the Bankruptcy Estate of the painter. Hiring a cheaper, or similarly priced qualified painter results in no harm and thus no claim.

If the homeowner files, then unless the painter cannot find other work, the painter has no claim. If the painter can't find other work, the painter may have a claim for lost profit against the Bankruptcy Estate of the homeowner.

The odd situation arises where the painter has a lucrative contract to paint. If we assume the homeowner has agreed to pay an amount that would result in a substantial profit and the painter files, then the Bankruptcy Estate of the painter might want to exercise the right of the painter under the contract to paint and be paid with a goal of obtaining the profit. The Estate in this case would recognize

the need to have the painting done, but might be willing to assume that cost and hire replacement painters, or assign the contract to replacement painters for some return for the Estate. If the Estate can do this, the Bankruptcy Code allows assumption of the contract. 11 U.S.C. § 365(a).

Where performance of the contract would likely result in a loss to the Bankruptcy Estate, the Estate can "reject" the contract, and accept the consequence that a claim can be made against the Estate. 11 U.S.C. § 365(g).

The painter -homeowner contract involves a general service. Replacement house painters would seem to be available and satisfactory. But where adequate alternatives do not exist, for example had Picasso been hired to do a portrait, then his unique skills would have been part of the contract, and substitution - even by another great artist - would not be deemed adequate alternative performance. Assumption of such a contract is not allowed. 11 U.S.C. § 365(e)(2)(A)(i).

In most of these examples, the importance of defining the contract as executory or not is on the relationship between the Debtor and the other contracting party. The effect on the Bankruptcy Estate is primarily related to the existence of claims, although one significantly different alternative has been identified.

The provision of services to Mr. Scotchel's client <u>after he filed for</u>

-23-

bankruptcy relief under a contract might be characterized as a relationship under an executory contract. Because the identity of the attorney performing legal services is attorney specific - the Picasso rule - such a contract is not assumable by the Bankruptcy Estate.

But remember in this case, there was no difficulty with the client being served. The testimony established that the Bordas firm supplied all services necessary. Mr. Scotchel did nothing. Whether or not Mr. Scotchel's ongoing contractual relationship terminated as a result of automatic rejection of the contract 60 days after the order for relief[9] has never been an issue between the client, the Bordas firm, Mr. Scotchel or the Estate.  No purpose is served by making this inquiry, and the Bankruptcy Court did not do so.

The right of recovery that is at issue is the pre-petition contingent account receivable component of the various relationships that were created by contracts. The entire inquiry into executory contract law has been, and remains a "red herring." Judge Flatley understood this, and so did not dwell on the non-productive inquiry about the post-petition character of the Debtor's relationship to the client. This was not legal error.

### Procedural Issues

---

[9] 11 U.S.C. §365(d)(1).

Debtor has suggested that the Trustee has somehow failed to follow "proper procedure" to afford the Debtor an opportunity to litigate the "property of the estate" question. The Trustee denies such a suggestion. The Trustee filed a timely objection to the exemption claim of the Debtor under Bankruptcy Rule 4003(b). The objection may actually not have been necessary because the Debtor objectively exempted only $1.00. The Trustee's objection was understood by the Bankruptcy Court to be a prophylactic effort to clarify that the Debtor's attempt to "signal" an effort to make an unauthorized claim of exemption was ineffective as a matter of law.

After the Debtor raised the issue of whether or not the recovery made by the Trustee included a recovery of some component of what the Debtor could retain as a post-petition asset. the Bankruptcy Court allocated the burden of proof to the Trustee by analogy to 11 U.S.C. § 542. That section defines a procedure for a Trustee to seek turnover of property to a Bankruptcy Estate. (Docket Entry No. 184 at page 4). In doing so, the Bankruptcy Court did not hold that a turnover proceeding was required, only that it provided the best analogy for understanding who had the burden of proof. The Bankruptcy Court was fully cognizant that the Trustee had made a recovery without the need for judicial assistance. Id.

Complaints that the Trustee did not institute an adversary proceeding are

consequently bizarre. The Debtor, not the Trustee, first raised this issue. The Trustee previously had effective non-judicial relief. The Trustee had recovered the sum at issue.

The Debtor has not identified what rights he might have had in an Adversary Proceeding that he lacked in the litigation actually undertaken.[10] The Debtor had notice of what issues the Bankruptcy Court intended to decide. Debtor had a full and fair  opportunity to litigate, an opportunity which included submitting the post-hearing affidavit of Mr. Bordas. No aspect of the Debtor's appeal warrants relief on such grounds.

### Conclusion

WHEREFORE, the Appellee-the Trustee- asks that the decision of the District Court affirming the decision of the Bankruptcy Court be affirmed.

RESPECTFULLY SUBMITTED,

*/s/ Martin P. Sheehan*
Martin P. Sheehan

_____

[10] As far as the Trustee can tell, the only procedural distinction between a "contested motion" and an adversary proceeding is the form of the caption. Service of the motion is the same as that required for a complaint in an adversary proceeding. Compare Bankruptcy Rule 9014(b) with Bankruptcy Rule 7004. Matters started as motions can be made subject to every Rule applicable to adversary proceedings. See Rule 9014(c).

**SHEEHAN & NUGENT, P.L.L.C.**
41 Fifteenth Street
Wheeling WV 26003
(304) 232-1064
(304) 232-1066 fax

## CERTIFICATE OF SERVICE

I hereby certify that this 16th day of June 2014, I have electronically filed the aforementioned brief and served the Appellant electronically at his e-mail address below. I have caused to be mailed by United States Postal Service two copies of the document Appellant at his address below

John C. Scotchel,
P.O. Box 1289
Morgantown, WV 26507

and by e-mail to

scotchel@gmail.com.

/s/ Martin P. Sheehan
Martin P. Sheehan

## Oral Argument

Oral argument is unnecessary.

## Certificate of Compliance

1.    This Brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because it contains **4,477** words, excluding the parts of the Brief exempted by Fed .R. App .P. 32 (a)(7)(B)(iii).

2.    This Brief complies with the type face requirements of Fed. R. App.

P. 322(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced type face using Word 2002 in Times New Roman 14 point.

Respectfully submitted,

/s/ Martin P. Sheehan

Martin P. Sheehan, Esq.